**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

Minnesota Beef Industries, Inc.,

Defendant.

Civil Action No. 02-CV-810DSD/SRN

STIPULATION TO INTERVENE
AND ORDER

---

WHEREAS, Sheila Kutz has noticed a motion to intervene in this action, and the parties above-named do not object to her intervention in this action;

THEREFORE, the parties through their undersigned attorneys hereby stipulate as follows:

1. Sheila Kutz may intervene in this action by filing and serving the Amended Complaint in Intervention attached hereto as Exhibit A; and
2. By stipulating to intervention by Sheila Kutz, Defendant does not waive any affirmative defenses which it might otherwise assert, and such defenses are expressly preserved; and
3. Sheila Kutz may serve her Amended Complaint in Intervention as Plaintiff-Intervenor on or before October 1, 2002.

FILED SEP 1 8 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

IT IS SO STIPULATED:

Dated: September 11, 2002

Culberth, Lienemann & Stratton

By: ______________________

Celeste E. Culberth
Leslie L. Lienemann
Culberth, Lienemann & Stratton
Attorneys at Law
1050 Piper Jaffray Plaza
444 Cedar Street
St. Paul, MN 55101
(651) 290-9300

ATTORNEYS FOR PLAINTIFF – INTERVENOR SHEILA KUTZ

Dated: September 13, 2002

WILLIAM J. EGAN, PLC

By ______________________

William J. Egan
150 Edina Executive Plaza
5200 Willson Road
Edina, MN 55424
(952) 836-2770

ATTORNEY FOR DEFENDANT

Dated September 12, 2002

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

By ______________________

Tina Burnside
Sr. Trial Attorney
EEOC, Minneapolis Area Office
330 South Second Avenue
Suite 430
Minneapolis, MN 55401-2224
(612) 335-4047

IT IS SO ORDERED:

Dated: September 18, 2002

Susan Richard Nelson

Magistrate Judge Susan Richard Nelson

**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

and

Sheila Kutz,

Plaintiff - Intervenor,

v.

Minnesota Beef Industries, Inc.,
Defendant.

Civil Action No. 02-CV-810DSD/SRN

**AMENDED COMPLAINT IN INTERVENTION (Jury Trial Demand)**

---

**INTRODUCTION**

Plaintiff employee managed the Quality Assurance Department. Defendant employer placed the Plaintiff in an environment permeated with sexual harassment, it discriminated against her in her wage and, when she complained, the Defendant employer physically threatened her and stripper her of her managerial pay, causing her to constructively discharge her employment.

**THE PARTIES**

1. Plaintiff Sheila Kutz is an individual residing in Brownton, Minnesota. Plaintiff is a woman.

2. Defendant Minnesota Beef Industries, Inc. (hereinafter "Minnesota Beef"), is a corporation doing business at Buffalo Lake, Minnesota.

3. Minnesota Beef is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. and within the meaning of



Exhibit A

the Minnesota Human Rights Act, Minn. Stat. §363.01 et seq.

## JURISDICTION

1. This court has original jurisdiction over Plaintiff's claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. Jurisdiction over these claims is appropriate under 28 U.S.C. §1331.

2. Plaintiff's remaining claims are so related to those over which this court has original jurisdiction that they form part of the same case and controversy. Supplemental jurisdiction is, therefore, appropriate under 28 U.S.C. §1367.

## FACTS

1. Plaintiff began working for Defendant Minnesota Beef in 1992 as a meat cutter. She injured her back in 1995, and became unable to work as a meat cutter.

2. In late August or early September 1995, Minnesota Beef offered Plaintiff a position of Quality Assurance Manager. Minnesota Beef promised her that she would only be required to perform quality assurance work, with no lifting and stretching and would only be required to work forty hours per week, because of her back injury and work restrictions.

3. Prior to the time that Plaintiff accepted this position, the position had been held by a male employee. Minnesota Beef paid its male Quality Assurance Managers a higher salary than it paid Plaintiff.

4. When Minnesota Beef offered the position to Plaintiff, the owners told Plaintiff that, because she had little experience, it would start her off at a salary of $380 per week. Defendant promised that, as she gained knowledge and experience, they would increase her salary, to eventually be the same rate her male predecessor had been paid.

5. On September 23, 1995, Defendant increased Plaintiff's salary to $400.00 per

week.

6. On January 22, 1996, her salary increased to $425.00 per week. On May 27, 1996, Plaintiff's salary increased to $450.00 per week.

7. Then, Charles McCarthy and William Gilger bought the Defendant packing plant. They told Plaintiff that Minnesota Beef would no longer accommodate her work restrictions, and that she would be required to work fifty to sixty hours per week.

8. On September 11, 1996, Plaintiff's treating physician told Minnesota Beef that Plaintiff could work no more than eight hours per day because of her serious injury.

9. On September 30, 1996, McCarthy and Gilger changed Plaintiff's compensation to $9.00 per hour and told Plaintiff that if she did not get her doctor to lift that restriction, she would be fired.

10. Plaintiff attempted to work fifty to sixty hours per week, and received overtime pay for that work. On December 30, 1996, McCarthy and Gilger again changed her compensation, back to salary at $480.77 per week--less than she had been making as an hourly employee.

11. On at least two occasions, Plaintiff was told that if she wanted more money, she ought to put on a dress and dance on the catwalk above the boning room to "keep the boys happy."

12. Upon information and belief, Plaintiff's male predecessor was never told to put on a dress and dance on the catwalk to keep the boys happy.

13. Throughout Plaintiff's employment, Defendant Minnesota Beef maintained an atmosphere that was hostile toward women.

14. Plaintiff's supervisors and co-workers engaged in sexually offensive conduct toward Plaintiff, and toward other women in Plaintiff's presence. That conduct included, but was not limited to the following:

    a. touching Plaintiff's breasts;

b. touching Plaintiff's shoulders;

c. touching Plaintiff's abdomen and telling her she was getting fat;

d. calling Plaintiff "honey" and "sweetheart";

e. telling Plaintiff to put on a dress, dance on the catwalk and keep the boys happy;

f. calling Plaintiff "bitch" and "cunt";

g. making sexual comments, including but not limited to, "My wife's going to get it whether she wants it or not;"

h. "The only way to keep Sheila quiet is to stick a dick in her mouth;" and

i. When Plaintiff told the Plant Manager to clean his saw, he replied, "Suck my dick" and refused to wash the saw.

15. Such conduct was sexual in nature and was directed at Plaintiff because she is a woman.

16. Such conduct was frequent, regular and so pervasive that it became a condition of Plaintiff's employment.

17. Plaintiff did not welcome this conduct.

18. Defendants knew of the pervasive sexual conduct in the workplace, but did not take action to stop the conduct.

19. Defendant did not disseminate a sexual harassment policy to its employees.

20. After the INS raid in the Spring of 1997, the plant was severely short staffed. Rather than cutting down on the number of cattle slaughtered, McCarthy and Gilger forced the quality assurance workers to cut meat on the line, leaving no one to perform the quality assurance job functions.

21. On May 30, 1997, Plaintiff was scheduled to leave the plant at 2:00 p.m., having worked more than eight hours that day and having worked more than forty hours that week. When she left, there were two quality assurance workers working in the plant.

22. After Plaintiff left the plant, the kill floor foreman instructed the two quality assurance workers to work on the line, leaving no one to perform the quality assurance function.

23. On June 4, 1997, Plaintiff met with McCarthy and Gilger to discuss her work restrictions, the fact that they had not given her the step raises she had been promised, and the fact that the plant's microbe levels were too high. McCarthy threatened plaintiff, saying he was going to "kick [her] ass," and, "shove [his] size nine shoe up her] ass" for leaving the plant on May 30. McCarthy told her that it was her responsibility to make sure the plant had quality assurance coverage at all times, or to be there herself around the clock. When Plaintiff explained to McCarthy that she had always done so, but that the foremen were reassigning her team in her absence, McCarthy merely continued yelling at her and threatening her.

24. On June 5, 1997, Plaintiff again met with McCarthy and Gilger. In that meeting, McCarthy again became verbally abusive. After the meeting, Plaintiff asked McCarthy whether she had been fired. He called her back into the room, yelled at her and raised his arm as though to strike her.

25. On June 10, 1997, Gilger and McCarthy demoted her, stripping her of all managerial responsibility.

26. On June 11, 1997, Plaintiff constructively discharged her employment.

**COUNT ONE**

(Minnesota Human Rights Act)

(Sexual Harassment)

27. Plaintiff realleges the allegations contained in paragraphs one through 26 above and includes them in this count as though fully restated herein.

28. Defendant has violated the Minnesota Human Rights Act, Minn. Stat. §363.03, Subd. 1, by intentionally subjecting Plaintiff to a sexually hostile work

environment based upon gender, including physical touching and verbal harassment which caused her constructive discharge from employment. Plaintiff suffered tangible employment action resulting from her supervisor's sexual harassment. Defendant had action knowledge of the sexually hostile environment. Defendant had imputed knowledge of the sexually hostile environment. Defendant should have known of the sexually hostile environment.. Defendant failed to take timely and appropriate action to stop the harassment.

29. As a result of this sexual harassment, Plaintiff constructively discharged her employment and has suffered and will continue to suffer loss of pay, emotional anguish.

30. As a result of this sexual harassment, Plaintiff has incurred and will continue to incur, attorneys fees and costs.

**COUNT TWO**

(Minnesota Human Rights Act)

(Gender Discrimination)

31. Plaintiff realleges the allegations contained in paragraphs one through 30 above and includes them in this count as though fully restated herein.

32. Defendant plant has violated the Minnesota Human Rights Act, Minn. Stat. §363.03, Subd. 1, by discriminating in the terms and conditions of employment on the basis of gender.

33. As a result of this gender discrimination, Plaintiff constructively discharged her employment and has suffered and will continue to suffer loss of pay, emotional anguish.

34. As a result of this gender discrimination, Plaintiff has incurred and will continue to incur, attorneys fees and costs.

**COUNT THREE**

(Title VII)

(Gender Discrimination)

35. Plaintiff realleges the allegations contained in paragraphs one through 34 above and includes them in this count as though fully restated herein.

36. Defendant plant has violated the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2, by discriminating in the terms and conditions of employment on the basis of gender.

37. As a result of this gender discrimination, Plaintiff constructively discharged her employment and has suffered and will continue to suffer loss of pay, emotional anguish.

38. As a result of this gender discrimination, Plaintiff has incurred and will continue to incur, attorneys fees and costs.

**COUNT FOUR**

(Title VII)

(Sexual Harassment)

39. Plaintiff realleges the allegations contained in paragraphs one through 39 above and includes them in this count as though fully restated herein.

40. Defendant plant has violated the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2, by intentionally subjecting Plaintiff to a sexually hostile work environment based upon gender, including physical touching and verbal harassment which caused her constructive discharge from employment. Plaintiff suffered tangible employment action resulting from her supervisor's sexual harassment. Defendant had action knowledge of the sexually hostile environment. Defendant had imputed knowledge of the sexually hostile environment. Defendant should have known of the sexually hostile environment.

41. As a result of this sexual harassment, Plaintiff constructively discharged her

employment and has suffered and will continue to suffer loss of pay, emotional anguish.

42. As a result of this sexual harassment, Plaintiff has incurred and will continue to incur, attorneys fees and costs.

## JURY DEMAND

Plaintiff demands a jury on all claims.

## PRAYER FOR RELIEF

Plaintiff prays the Court to award her the following relief:

1. Damages for lost pay and benefits in an amount to be proved at trial;
2. Damages for emotional anguish, in an amount to be proved at trial;
3. Punitive damages in an amount to be proved at trial;
4. Treble damages pursuant to Minn. Stat. §§ 363.14 and 363.071;
5. A civil penalty to the State of Minnesota pursuant to Minn. Stat. §§ 363.14 and 363.071
6. Attorneys fees and costs; and
7. Such other relief as the court deems just and equitable

Dated: September 11, 2002

Culberth, Lienemann & Stratton

By:__________________________
Celeste E. Culberth
Leslie L. Lienemann
Culberth, Lienemann & Stratton
Attorneys at Law
1050 Piper Jaffray Plaza
444 Cedar Street
St. Paul, MN 55101
(651) 290-9300

ATTORNEYS FOR PLAINTIFF –
INTERVENOR SHEILA KUTZ