UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. 02-810 (DSD/SRN)

**Equal Employment Opportunity Commission,**

**Plaintiff,**

**and**

**Sheila Kutz**

**Plaintiff-Intervenor,**

**v.**

**Minnesota Beef Industries, Inc.,**

**Defendant.**

**ORDER**

---

Celeste E. Culberth, Esq., on behalf of Plaintiff-Intervenor Kutz

William J. Egan, Esq., on behalf of Defendant

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on May 9, 2003 on Plaintiff-Intervenor Kutz's[1] Motion to Compel Discovery Responses and Entry Upon Land (Doc. No. 22). This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

[1] The EEOC originally joined in this motion. On April 28, 2003, however, the EEOC submitted a letter to the Court withdrawing from the motion because it did not believe it needed additional information to prosecute its case. Thus, although Sheila Kutz is the Plaintiff-Intervenor, hereinafter she will be referred to simply as Plaintiff.



MAY 2 3 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

This is a sex discrimination/wage discrimination case. Since the parties and the Court are familiar with the factual background of this matter and much of what has occurred regarding discovery is not in dispute, this Court will repeat those factual matters only where relevant. Plaintiff requests an Order compelling Defendant to respond to interrogatories, produce documents, and allow Plaintiff to enter Defendant's facility to video tape certain operations. Defendant has apparently submitted a motion for partial summary judgment, and Plaintiff was to respond by May 23, 2003 yet allegedly had not received discovery from Defendant pertinent to her response. At the hearing on this matter, this Court granted Plaintiff a two month extension for filing her response to the summary judgment motion. Each of Plaintiff's discovery requests will be addressed in turn.

## I. DISCUSSION

### A. Interrogatory Number 7: Payroll Information

> Interrogatory number 7: Identify all employees employed by Defendant at the Minnesota Beef from 1992 to the present, stating the dates of their hiring and termination or confirmation that they are still employed by the Defendant, their salary and a full description of their job with the Defendant.[2]

Plaintiff has narrowed the relevant periods that are missing from Defendant's responses to the following: June of 1995 through October of 1995 and October 25, 1996 through December 31, 1996. Defendant has apparently abandoned any relevancy objection, but explains that the requested documents "are not in the possession of Minnesota Beef, and Minnesota Beef representatives do not know what might have happened to them." (Def.'s Mem. in Opp'n to

---

[2] Document request number one requires Defendant to produce those documents that Defendant relied on in answering the interrogatories.

Mot. to Compel Disc., at 2). At the hearing on this matter, Defendant agreed that it should contact its former accountant, Robert Saunders, to determine if Mr. Saunders may have any of the information in paper or electronic form. Defendant also agreed to contact its prior attorneys to determine if they have the missing documents.[3] On a previous occasion, Defendant had stated that certain documents did not exist or that it could not find them. Later, however, those documents were found in a previous litigation file.

One of the problems with producing or locating these documents, and documents in general, has been Defendant's archaic and what appears to be haphazard "method" of keeping and storing records. Defendant has no policy regarding keeping and storing records. Defense counsel does not know what steps Defendant took to retain documents after it was put on notice of the lawsuit. Defendant's primary storage facility is a large barn and trailer within the barn wherein the records are stored in the rafters subject to those environmental conditions commonly associated with a barn.

Defendant must search for the requested records again. Defendant shall contact Robert Saunders and prior counsel to determine if they retained any of the requested records in paper form, on a computer hard drive, or by some other method. This search must be completed and any records found produced by June 5, 2003. If Defendant simply cannot find such records by the due date, Defendant must execute a sworn affidavit so stating.

### B. <u>Interrogatory Number 16: USDA Inspectors</u>

Interrogatory number 16: Identify every U.S.D.A. inspector who inspected the

---

[3] Defendant should ask both Mr. Saunders and prior counsel about the existence of all information pertinent to the requests herein.

plant from 1992 through the present.

Defendant explains that it does not maintain records on the identities of USDA inspectors. Dr. Steven Johnson, the USDA inspector stationed at the Minnesota Beef plant, was questioned concerning USDA inspectors who have visited Defendant's plant. Defendant provided Plaintiff with the names of those USDA inspectors it and Dr. Johnson recalled inspecting at the plant.

Defendant has made a reasonable attempt at locating the names of past USDA inspectors who have visited the plant. To the extent Defendant has not produced records it does have in its possession indicating the names of USDA inspectors or an inspector that reported alleged sexual harassment, Defendant must produce those documents and names by June 5, 2003. Plaintiff, if unsatisfied, may inquire of the USDA as to the names of inspectors sent to Defendant's plant.

### C. Interrogatory Number 18: Customer Complaints

> Interrogatory number 18: Identify any and all complaints Defendant received from customers or employees concerning microbial counts or product safety, and for each such complaint state the date of the complaint and the nature of the complaint.

Defendant states that it "has produced all documents in its possession reflecting complaints concerning microbial counts or product safety." (Def.'s Mem. in Opp'n to Mot. to Compel Disc., at 3). Defendant has no documentation of customer complaints prior to 1996.

Due to Defendant's troubling document retention methods, Defendant shall again search for documents relating to customer complaints from 1996 through 2001 and shall produce any documents found by June 5, 2003.

### D. Document Requests Number 7 and 9: Personnel Files

> Request number 7: Produce the personnel files of each witness who is a current or former employee Defendant intends to call at a trial in this case.

> Request number 9: Produce all personnel files for employees working Quality Assurance or Quality Control positions from 1990 to the present.

Plaintiff explains that two issues with these requests remain unresolved. First, the personnel file of Connie Sallee (Schwab), who worked in quality assurance in May and June of 1997, has not been produced. Second, electronic disciplinary evaluations of Plaintiff have not been produced. Counsel for Defendant explained at the hearing on this matter that he brought the Sallee file to one of the document productions at Defendant's barn with the intent to give it to Plaintiff. Somehow, however, the file was not given to Plaintiff, and counsel simply cannot find it despite exhaustive searches.

Defendant must search for the Sallee file and produce such file if it is found by June 5, 2003. If Defendant simply cannot find such file by the due date, Defendant must execute a sworn affidavit so stating.

Despite some disagreement as to the events leading up to Defendant providing access to its computers, the parties agree that Plaintiff may have access to computers that may contain work evaluation files. Nevertheless, this Court orders Defendant to permit Plaintiff to inspect those computer hard drives that contain work evaluation files. Such inspections may include hard drives that Defendant alleges may have "crashed." If work evaluations for Plaintiff simply do not exist or the computer hard drive(s) containing such evaluations has been erased or damaged or it is no longer possible to retrieve such evaluations from such hard drive(s), Defendant must execute a sworn affidavit so stating by June 5, 2003.

**E. <u>Document Request Number 11: Financial/Loan Documents</u>**

> Request number 11: Produce all financial documents relating to Defendant

Minnesota Beef from 1995 to the present.

Plaintiff has narrowed her request to the following: tax returns and schedules and documentation of loans made to employees. Defendant does not object to producing tax returns from 1995 to the present. On or about May 8, 2003, Defendant produced some loan documentation that was kept on a computer spreadsheet. The Court reviewed a portion of these documents at the hearing on this matter and agrees with Plaintiff that spreadsheet documents are insufficient. For instance, the spreadsheet appears to utilize an erroneous formula. Defendant does not object to this conclusion.

Defendant must search for and, if found, produce paper/hard copy documents relating to loans to employees by June 5, 2003. Such documentation should include basic information such as the following: what employee the loan was made to, who made or authorized the loan, the date of origination, the amount of the loan, payments made, who made payments, and whether the loan was paid off. If Defendant simply cannot find such hard copy records by the due date, Defendant must execute a sworn affidavit so stating.

Defendant must also produce, to the extent it has not already, tax returns from 1995 to the present by June 5, 2003.

**F. <u>Document Request Number 12: Quality Assurance/Control Records</u>**

> Request number 12: Produce any written or electronic records relating to Quality Assurance or Quality Control, including any and all written or electronic records of microbial testing.

Defendant agrees to produce the Hazard Analysis of Critical Control Points documents. Defendant explains that it has produced all microbial count records in its possession but that microbial records from May 1997 through the end of 1997 simply do not exist. (Def.'s Mem. in

Opp'n to Mot. to Compel Disc., at 3); (Gilger Aff. ¶21). The effect, if any, of the absence of some of these records is not to be determined by this Order.

### G. Document Request Number 13: Customer List

> Request number 13: Any and all documents relating to the identity of customers and any standards or specifications required by customers of Defendant Minnesota Beef.

Defendant has asserted as a defense to Plaintiff's pay disparity claims that microbial counts were too high during Plaintiff's tenure and this affected Defendant's sales. This information is relevant to allow Plaintiff to determine if Defendant's defense has any validity. Thus, Defendant shall produce a customer list for the years 1996 and 1997 by June 5, 2003. Upon receipt of the customer list, Plaintiff may only contact the customers identified through subpoena. Plaintiff shall not use the customer list for any purpose other than this litigation.

### H. Entry Upon Land

Defendant operates a cattle slaughterhouse and boning operation. Plaintiff worked at Defendant's plant in a quality assurance/control capacity. Plaintiff alleges that she was paid less than comparable male quality assurance personnel and that she was sexually harassed. One of Defendant's defenses to the pay disparity claim is that Plaintiff could not keep microbial counts at a satisfactory level. Plaintiff alleges that Defendant funneled workers who were suppose to be stationed at Critical Control Points or otherwise helping Plaintiff to other areas of the plant. Plaintiff also alleges that she told Defendant that in order to reduce microbial counts Defendant would have install new equipment. Ultimately, Defendant did install new equipment. Thus, Plaintiff argues that video taping certain Critical Control Points and new equipment is relevant to whether Defendant's reason for paying her less was simply pretextual and would allow the jury

to understand beef processing. Finally, Plaintiff alleges that plant manager Dale Prechel told her to "suck his dick" when she asked him to wash a splitting saw. Dale Prechel later allegedly testified in a deposition that, paraphrased herein, Plaintiff was lying about the incident because the splitting saw already has water running on it. Plaintiff argues that videotaping the splitting saw will be relevant to impeach Mr. Prechel's testimony because, for those who do not under beef processing, the water on the splitting saw is for lubrication only, not cleaning.

Defendant responds that the real purpose for the video tape is to harass Defendant, disrupt its operations, and shock the jury. Defendant argues, without specifying what burden it would impose, that such taping would be unduly burdensome. Defendant has not sought a protective order under Federal Rule of Civil Procedure 26(c), however, this does not affect this Court's ability protect Defendant from discovery on its own initiative under Rule 26(b)(2).

Federal Rule of Civil Procedure 34(a) provides:

> Any party may serve on any other party a request . . . to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, *within the scope of Rule 26(b).*

(Emphasis added)

Under Federal Rule of Civil Procedure 26(b), parties are generally entitled to discover those materials that are relevant to a claim or defense of any party. Upon a showing of good cause, parties may also obtain those materials that are relevant to the subject matter of the case. FED. R. CIV. P. 26(b)(1). "Relevancy," in the context of discovery under the Federal Rules of Civil Procedure, is broadly construed, e.g., Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 635 (D. Minn. 2000) ("The standard, therefore, is widely recognized as one that is necessarily broad

in its scope . . . ."), and is a less exacting standard than the relevancy required for the admissibility of evidence at trial. E.g., Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992). Rule 26(b)(1) provides that all discovery is subject to the limitations of Rule 26(b)(2)(i), (ii), and (iii). Rule 26(b)(2) explains the following:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that . . . (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

The Fourth Circuit has stated, which has been relied on by a variety of federal courts, that in deciding whether entry upon land should be permitted "the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." Belcher v. Bassett Furniture Indus., Inc., 588 F.2d 904, 908 (4th Cir. 1978); accord New York State Ass'n for Retarded Children, Inc. v. Carey, 706 F.2d 956, 961 (2d Cir. 1983); McKesson Corp. v. Islamic Republic of Iran, 185 F.R.D. 70, 76 (D.D.C. 1999); Minnesota Mining & Mfg. Co., Inc. v. Nippon Carbide Indus. Co., Inc., 171 F.R.D. 246, 248 (D. Minn. 1997). This test, however, is largely a reflection of the limits a court may impose under Rule 26(b)(2).

Video taping Defendant's operations is relevant to Plaintiff's claims. The video tape is relevant to enable a jury to understand the duties Plaintiff performed, and, therefore, relevant to determining whether the explanation Defendant gave for paying Plaintiff less–her microbial counts were too high in relation to her comparators–was really a pretext for discrimination. A video tape is likely the most descriptively accurate method of allowing the jury to understand

Plaintiff's theory of lack of personnel stationed at Critical Control Points, what happens at Critical Control Points, and how the new equipment, which she allegedly requested, better controls microbial counts. All of these issues are relevant to pretext. Plaintiff, of course, cannot obtain such a description from any source other than taping Defendant's operations. The video tape may also be relevant to show how a splitting saw operates and may form the basis of impeachment.

Outsiders entering any business will inevitably cause some interruption. Defendant's business, however, is not the ordinary business. This Court recognizes the potential for significant interruption to Defendant's operations due to safety concerns. This Court also recognizes the temptation for admitted outsiders to informally question employees. Accordingly, this Court will impose strict limits on the video taping such that the relevance and likely benefits of video taping will outweigh the potential burdens.

Plaintiff shall be permitted to video tape Defendant's operations with the following limitations. First, Plaintiff, Plaintiff's attorney, and an individual operating a video camera (three people) are the only persons that Defendant must admit to its premises. Second, the premises or objects that may be taped or recorded are limited to those Critical Control Points relevant to Plaintiff's former position, a splitting saw, and such relevant, new equipment that Defendant has purchased since Plaintiff's employ. Third, Plaintiff and her representatives' presence in Defendant's premises shall not exceed two hours. Defendant shall not artificially inhibit or obstruct the orderly advancement of the inspection, and Plaintiff must prepare and proceed with

its inspection so as to observe the time limits.[4] Fourth, Plaintiff and her representatives shall not question any of Defendant's employees other than the representative(s) Defendant designates as a guide. See Ass'n for Retarded Children, 706 F.2d at 961. In allowing questioning of the designated guide(s), only those questions and dialogue practically necessary to proceed through the inspection are permitted. Fifth, the killing of any animal shall not be video taped or otherwise recorded. Sixth, the recording of Defendant's premises shall not be used for any purpose other than this litigation.

Finally, this Court wishes to make clear that in allowing an inspection and video taping of Defendant's operations this Court expresses no opinion as to whether such evidence is admissible at a trial.

Plaintiff's request for sanctions is at this point not warranted.

[4] In this regard, it is advisable that the parties predetermine the objects and premises to be viewed and coordinate Plaintiff's path.

**THEREFORE, IT IS HEREBY ORDERED that:**

**1.** Plaintiff-Intervenor Kutz's Motion to Compel Discovery Responses and Entry Upon Land (Doc. No. 22) is **GRANTED** with the limitations and directions provided herein.

Dated: May 23, 2003

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge